**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| MOHAMMAD UDDIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CONN'S INC, NORMAN L. MILLER, and GEORGE L. BCHARA,<br><br>Defendants. | Case No. 4:20-cv-1705<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mohammad Uddin ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Conn's, Inc. ("Conn's" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Conn's; and (c) review of other publicly available information concerning Conn's.

**NATURE OF THE ACTION AND OVERVIEW**

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Conn's securities between September 3, 2019 and December 9, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Conn's is a specialty retailer that sells branded durable consumer goods. Conn's has two reportable segments: (i) retail, which includes product categories such as furniture, home appliance, consumer electronics, and home office; and (ii) credit, which includes the Company's in-house consumer credit programs.

3. On December 10, 2019, before the market opened, Conn's reported its third quarter 2020 financial results in a press release. Therein, the Company reported retail revenues of $280.3 million, compared to $284.1 million in the prior year period. Conn's attributed the revenue decline to a decrease in same store sales, which "reflects underwriting adjustments made during the three months ended October 31, 2019."

4. On this news, the Company's share price fell $6.85 per share, or over 33%, to close at $13.65 per share on December 10, 2019, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Conn's was experiencing an increase in first payment defaults and 60-plus day delinquencies; (2) that, as a result, Conn's was reasonably likely to record an increase to its provision for bad debts; (3) that the Company made certain underwriting adjustments, including tightening its standards for new customers and online applicants; (4) that, as a result, the Company's same-store sales would be adversely impacted; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11. Plaintiff Mohammad Uddin, as set forth in the accompanying certification, incorporated by reference herein, purchased Conn's securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Conn's is incorporated under the laws of Delaware with its principal executive offices located in The Woodlands, Texas. Conn's common stock trades on the NASDAQ exchange under the symbol "CONN."

13. Defendant Norman L. Miller ("Miller") was the Company's Chief Executive Officer ("CEO") and Chairman of the Board at all relevant times.

14. Defendant George L. Bchara ("Bchara") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15. Defendants Miller and Bchara (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16. Conn's Conn's is a specialty retailer that sells branded durable consumer goods. Conn's has two reportable segments: (i) retail, which includes product categories such as

furniture, home appliance, consumer electronics, and home office; and (ii) credit, which includes the Company's in-house consumer credit programs.

**Materially False and Misleading**
**Statements Issued During the Class Period**

17. The Class Period begins on September 3, 2019. On that day, Conn's announced its second quarter 2020 financial results in a press release that stated, in relevant part:

> **Second quarter of fiscal year 2020 highlights include:**
>
> - Total retail sales of $306.1 million, an increase of 3.3% over the prior fiscal year period
> - Same store sales increase of 0.4% in non-Hurricane Harvey markets
> - Earnings of $0.62 per diluted share, an increase of 17.0% over the prior fiscal year period
> - Second quarter retail gross margin of 40.5%
> - Consolidated operating margin of 10.4%
> - Credit spread of 890 basis points, the best second quarter credit spread in six years
> - Credit segment revenues of $94.8 million, an increase of 7.5% over the prior fiscal year period
> - Net income of $20.0 million, compared to $17.0 million during the prior fiscal year period
> - Adjusted EBITDA of $54.0 million, or 13.5% of total revenues
>
> * * *
>
> **Outlook and Guidance**
>
> The following are the Company's expectations for the business for the third quarter of fiscal year 2020:
>
> - Total retail sales growth between 4% and 8%;
> - Change in same store sales between negative 3% and positive 1%;
> - Markets not impacted by Hurricane Harvey between negative 2% and positive 2%; and
> - Markets impacted by Hurricane Harvey between negative 8% and negative 4%;
> - Retail gross margin between 40.0% and 40.5% of total net retail sales;
> - Selling, general and administrative expenses between 32.25% and 33.25% of total revenues;
> - Provision for bad debts between $46.5 million and $50.5 million;
> - Finance charges and other revenues between $94.0 million and $98.0 million;

- Interest expense between $14.5 million and $15.5 million; and
- Effective tax rate between 27% and 29% of pre-tax income.

18. The same day, Conn's filed its quarterly report on Form 10-Q with the SEC for the period ended July 31, 2019 (the "2Q20 10-Q"), affirming the previously reported financial results. Regarding the provision for bad debts, the Company stated, in relevant part:

> Provision for bad debts decreased to $49.7 million for the three months ended July 31, 2019 from $50.8 million for the three months ended July 31, 2018, a decrease of $1.1 million. The decrease was primarily driven by lower net charge offs of $1.6 million for the three months ended July 31, 2019 compared to the three months ended July 31, 2018, partially offset by a larger increase in the allowance for bad debts for the three months ended July 31, 2019 compared to the three months ended July 31, 2018. The larger increase in the allowance for bad debts was primarily driven by the year-over-year increase in the carrying value of the customer accounts receivable portfolio from July 31, 2018.
>
> * * *
>
> The percent of bad debt charge-offs, net of recoveries, to average outstanding portfolio balance was 13.0% for the three months ended July 31, 2019 compared to 13.8% for the three months ended July 31, 2018. ***The decrease was primarily due to the seasoning of loans originated with tighter underwriting standards***, improved collections execution, improvements in recoveries due to enhancements in our collections program and an increase in our average outstanding portfolio balance.

19. Regarding its policies for provision for bad debts, Conn's stated in the 2Q20 10-Q, in relevant part:

> We establish an allowance for doubtful accounts, including estimated uncollectible interest, to cover probable and estimable losses on our customer accounts receivable resulting from the failure of customers to make contractual payments. Our customer accounts receivable portfolio balance consists of a large number of relatively small, homogeneous accounts. None of our accounts are large enough to warrant individual evaluation for impairment.
>
> We record an allowance for doubtful accounts on our non-TDR customer accounts receivable that we expect to charge-off over the next 12 months based on historical gross charge-off rates over the last 24 months. ***We incorporate an adjustment to historical gross charge-off rates for a scaled factor of the year-over-year change in six month average first payment default rates and the year-over-year change in the balance of customer accounts receivable that are 60 days or more past due.*** In addition to adjusted historical gross charge-off rates, estimates of post-charge-off recoveries, including cash payments from customers,

> amounts realized from the repossession of the products financed, sales tax recoveries from taxing jurisdictions, and payments received under credit insurance and repair service agreement ("RSA") policies are also considered.

(Emphases added.)

20. Moreover, the 2Q20 10-Q stated that the Company's disclosure controls and procedures were "effective." It also stated: "For the quarter ended July 31, 2019, there have been no changes in our internal controls over financial reporting . . . that have materially affected, or are reasonably likely to materially affect, our internal controls over financial reporting."

21. The above statements identified in ¶¶ 17-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Conn's was experiencing an increase in first payment defaults and 60-plus day delinquencies; (2) that, as a result, Conn's was reasonably likely to record an increase to its provision for bad debts; (3) that the Company made certain underwriting adjustments, including tightening its standards for new customers and online applicants; (4) that, as a result, the Company's same-store sales would be adversely impacted; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

22. On December 10, 2019, before the market opened, Conn's reported its third quarter 2020 financial results in a press release. Therein, the Company reported retail revenues of $280.3 million, compared to $284.1 million in the prior year period. Conn's attributed the revenue decline to a decrease in same store sales, which "reflects underwriting adjustments made during the three months ended October 31, 2019." Specifically, the Company's press release stated, in relevant part:

> [Miller stated] "We are disappointed by our third quarter same store sales performance of negative 8.4%, which reflects the impact of underwriting adjustments we consider prudent and unprecedented market dynamics within our consumer electronics category. During the third quarter, we began to see

deteriorating performance of certain segments of the portfolio, primarily driven by new customers and sales from online applicants. We made the necessary adjustments to maintain our credit spread of approximately 1,000 basis points, which negatively impacted same store sales by approximately 4% to 5%. . . ."

**Retail Segment Third Quarter Results**

Retail revenues were $280.3 million for the three months ended October 31, 2019 compared to $284.1 million for the three months ended October 31, 2018, a decrease of $3.7 million or 1.3%. ***The decrease in retail revenue was primarily driven by a decrease in same store sales of 8.4%, partially offset by new store growth.*** The decrease in same store sales was driven by a decrease of 12.8% in markets impacted by Hurricane Harvey, and by a decrease of 6.7% in markets not impacted by Hurricane Harvey. We believe the decrease in markets impacted by Hurricane Harvey was attributable to rebuilding efforts during the three months ended October 31, 2018. Same store sales include e-commerce sales. ***The decrease in same store sales reflects underwriting adjustments made during the three months ended October 31, 2019, which negatively impacted same store sales.***

* * *

**Credit Segment Third Quarter Results**

* * *

Provision for bad debts decreased to $42.1 million for the three months ended October 31, 2019 compared to $47.3 million for the three months ended October 31, 2018, a decrease of $5.2 million. The decrease was driven by lower net charge-offs of $2.3 million for the three months ended October 31, 2019 compared to the three months ended October 31, 2018 and a decrease in the allowance for bad debts for the three months ended October 31, 2019. The decrease in the allowance for bad debts was primarily driven by a year-over-year decrease in the incurred loss rate and an increase in the customer recovery rate, ***partially offset by an increase in first payment default and delinquency rates and a greater increase in the year-over-year change in carrying value of the customer accounts receivable portfolio balance***.

Credit segment operating income was $15.6 million for the three months ended October 31, 2019, compared to $0.2 million for the three months ended October 31, 2018. On a non-GAAP basis, adjusted credit segment operating income for the three months ended October 31, 2019 ***was $16.8 million after excluding impairments of software costs for a loan management system that was abandoned during the third quarter of fiscal year 2020 related to the implementation of a new loan management system***.

(Emphases added.)

23. On this news, the Company's share price fell $6.85 per share, or over 33%, to close at $13.65 per share on December 10, 2019, on unusually heavy trading volume.

**CLASS ACTION ALLEGATIONS**

24. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Conn's securities between September 3, 2019 and December 9, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Conn's common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Conn's common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Conn's or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Conn's; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

30. The market for Conn's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Conn's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Conn's securities relying upon the integrity of the market price of the Company's securities and market information relating to Conn's, and have been damaged thereby.

31. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Conn's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Conn's business, operations, and prospects as alleged herein.

32. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Conn's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34. During the Class Period, Plaintiff and the Class purchased Conn's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

35. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by

virtue of their receipt of information reflecting the true facts regarding Conn's, their control over, and/or receipt and/or modification of Conn's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Conn's, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

36. The market for Conn's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Conn's securities traded at artificially inflated prices during the Class Period. On September 12, 2019, the Company's share price closed at a Class Period high of $26.71 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Conn's securities and market information relating to Conn's, and have been damaged thereby.

37. During the Class Period, the artificial inflation of Conn's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Conn's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Conn's and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38. At all relevant times, the market for Conn's securities was an efficient market for the following reasons, among others:

(a) Conn's shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Conn's filed periodic public reports with the SEC and/or the NASDAQ;

(c) Conn's regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Conn's was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

39. As a result of the foregoing, the market for Conn's securities promptly digested current information regarding Conn's from all publicly available sources and reflected such information in Conn's share price. Under these circumstances, all purchasers of Conn's securities during the Class Period suffered similar injury through their purchase of Conn's securities at artificially inflated prices and a presumption of reliance applies.

40. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the

sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

41. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Conn's who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

42. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Conn's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each

defendant, took the actions set forth herein.

44. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Conn's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Conn's financial well-being and prospects, as specified herein.

46. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Conn's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Conn's and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and

participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Conn's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Conn's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Conn's securities during the Class Period at artificially high prices and were damaged

thereby.

50. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Conn's was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Conn's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

53. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54. Individual Defendants acted as controlling persons of Conn's within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued

and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56. As set forth above, Conn's and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 15, 2020

By: *s/ Joe Kendall*

JOE KENDALL
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
Email: jkendall@kendalllawgroup.com

**GLANCY PRONGAY & MURRAY LLP**
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Mohammad Uddin*